**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                      )
**Jericho Baptist Church Ministries, Inc.**      )
   **(District of Columbia),**                     )
                                                      )
    **Plaintiff,**                                   )
                                                      )
       **v.**                                      )          **Case No. 16-cv-00647 (APM)**
                                                      )
**Jericho Baptist Church Ministries, Inc.**      )
   **(Maryland), et al.,**                          )
                                                      )
    **Defendants.**                               )
_____  )

**<u>MEMORANDUM OPINION AND ORDER</u>**

## I.    INTRODUCTION

This case is the latest in a series of actions filed in federal and state courts concerning control over the corporate identity and assets of Jericho Baptist Church Ministries, Inc. ("Church"). Plaintiff, Jericho Baptist Church Ministries, Inc. (DC) ("Jericho DC"), claims that, on March 15, 2009, a group of its members wrested control over Jericho DC by surreptitiously reconstituting its Board of Directors and then, 18-months later, merging Jericho DC into a new Maryland-based entity, Defendant Jericho Baptist Church Ministries, Inc. (Maryland) ("Jericho Maryland"). The individual Defendants—Denise Killen, Clifford Boswell, Gloria McClam-Magruder, Clarence Jackson, and Dorothy Williams ("Individual Defendants")—are alleged to have planned the takeover and then become Board members of the newly formed Jericho Maryland. Plaintiff initially filed this lawsuit in D.C. Superior Court, alleging a variety of state and federal claims and seeking both monetary and injunctive relief. The Individual Defendants and Defendant Jericho Maryland (collectively, "Defendants") removed this suit to federal court. This matter is before the court on Defendants' Motion to Dismiss.

This court does not write on a clean slate.  Plaintiff's central allegation in this case—that the Individual Defendants wrongfully reconstituted Jericho DC's Board of Directors in 2009—has been fully and finally adjudicated by the District of Columbia courts.  In October 2013, a group of Church members loyal to the deposed leadership of Jericho DC filed suit in D.C. Superior Court. *See George v. Jackson*, No. 7115-13, 2015 WL 12601903 (D.C. Super. Ct. July 7, 2015), *aff'd*, 146 A.3d 405 (D.C. 2016).  Defendants in this case were the defendants in *George*.  Following a three-day bench trial, The Honorable Stuart G. Nash found that Jericho DC's Board of Directors had been improperly reconstituted and that the newly constituted board's actions—including the decision to merge into Jericho Maryland—were invalid.  Judge Nash ordered broad equitable relief.  He barred the defendants from exercising ownership or control over any corporate assets of Jericho Maryland that formerly belonged to, or derived from, the corporate assets of Jericho DC.  He also declared that henceforth Jericho DC's Board of Directors would consist of those still-living individuals who were members of Jericho DC's Board prior to its improper reconstitution. As a consequence of Judge Nash's order, Jericho DC re-established itself as a corporation in good standing under District of Columbia law.  On September 22, 2016, the D.C. Court of Appeals affirmed Judge Nash's findings and judgment in full.  *See George*, 146 A.3d 405.

The litigation in *George* resolves some of the grounds for dismissal advanced by Defendants in this case.  In light of the findings and holdings in those prior proceedings, the court concludes it has personal jurisdiction over Defendants; this venue is proper; Plaintiff has capacity to sue; and Defendants' challenges to Plaintiff's common law conversion and fraud claims are without merit.  As to those issues not resolved by *George*, the court concludes Plaintiff has stated plausible claims for relief under both federal and state law.  Additionally, the court declines to transfer this matter.  Thus, Defendants' Motion to Dismiss is denied in full.

## II.      DISCUSSION

The court need not provide a full recitation of the allegations here.  The D.C. Court of Appeals' published decision summarizes Judge Nash's factual findings, and those findings largely mirror the Amended Complaint's allegations in this case.  *Compare George*, 146 A.3d at 410–12, *with* Am. Compl., ECF No. 8 [hereinafter Am. Compl.], ¶¶ 6–69.  Moreover, the court writes primarily for the parties, who are intimately familiar with this case.  Consequently, rather than repeat Plaintiff's allegations at length, the court will refer to specific allegations only as is necessary to resolve the various arguments Defendants assert.

### A.      Jurisdiction and Venue

#### 1.      Personal Jurisdiction

A court has personal jurisdiction over an individual if that individual has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  Where the court's subject-matter jurisdiction is predicated on a federal question, as here, the plaintiff must "rely on D.C. law to sue nonresident defendants, since no federal long-arm statute applies."  *See Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991).  Defendants first move to dismiss on the ground that this court lacks personal jurisdiction over each of them under the District of Columbia long-arm statute, D.C. Code § 13-423(a).  Defs.' Omnibus Mot. to Dismiss, ECF No. 15 [hereinafter Defs.' Mot.], Defs.' Mem. in Support, ECF No. 15-1 [hereinafter Defs.' Mem.], at 6–12.

Defendant Jericho Maryland's argument is unavailing.  In *George*, the D.C. Court of Appeals affirmed Judge Nash's conclusion that personal jurisdiction was proper because the "allegations—that Jericho Maryland merged with Jericho DC in violation of District of Columbia

3

law—related to events that took place when the Church, which Jericho Maryland now controls, was incorporated in D.C. and thus arose directly from Jericho DC's operation as a District of Columbia corporation." 146 A.3d at 413 (internal quotation marks omitted). Accordingly, as the D.C. Superior Court and the appellate confirmed, Jericho Maryland had sufficient minimum contacts with the District to warrant exercise of personal jurisdiction over Jericho Maryland. *Id.* at 415. The court is persuaded by the D.C. courts' analyses and concludes that it, likewise, can exercise personal jurisdiction over Jericho Maryland under the D.C. long-arm statute.

As to the Individual Defendants, the court concludes personal jurisdiction also exists. The D.C. long-arm statue reaches the directors of a nonprofit District of Columbia corporation "where the directors were self-perpetuating and in total control of the corporation[;] . . . . [t]he plaintiffs' allegations are that [the] directors participated in wrongful activities going to the very essence of that corporation's existence[;] . . . [and] at least one of those acts [of alleged wrongdoing] . . . indubitably occurred in the District." *Family Fed'n for World Peace v. Moon*, 129 A.3d 234, 243 (D.C. 2015). Here, as of March 15, 2009, the Individual Defendants are accused of improperly becoming board members of Jericho DC, a D.C. nonprofit corporation, Am. Compl. ¶ 3, 15–16; unlawfully merging Jericho DC into Jericho Maryland; and filing papers in the District of Columbia to reflect the merger, *id.* ¶¶ 28–29; *George*, 146 A.3d at 411. On these facts, "the[] directors clearly could anticipate being hauled into a District of Columbia court to account for their activities and . . . doing so does not violate notions of fair play and substantial justice." *Family Fed'n*, 129 A.3d at 243–44 (alteration adopted).[1] Accordingly, the court has personal jurisdiction over the Individual Defendants.

---

[1]  Defendant Killian additionally contends that the court lacks jurisdiction over her because Plaintiff did not properly serve her with process. Defs.' Mem. at 11. Defendant Killian, however, provides no evidence to support that assertion, only legal argument. *See id.* Moreover, the only record evidence of service indicates that Defendant Killian was

2.   *Venue*

Defendants also argue for dismissal on the ground of improper venue.  Defs.' Mem. at 12.
Venue is proper in a judicial district "in which a substantial part of the events or omissions giving
rise to the claim" occurred.  28 U.S.C. § 1391(b)(2).  That requirement is easily satisfied here.
Defendants are alleged to have filed papers with an agency of the District of Columbia that "falsely
represented that the Board of Trustees for Jericho DC unanimously approved" the merger with
Jericho Maryland.  *See* Am. Compl. ¶¶ 29–30.  That alleged conduct is clearly a "substantial part
of the events" giving rise to Jericho DC's claims.

Defendants' reliance on *Ananiev v. Wells Fargo Bank, N.A.* is misplaced.  There, the
court's conclusion that venue was improper rested, in relevant part, on the fact that "none of the
alleged actions committed by the defendants occurred in the District of Columbia."  968 F. Supp.
2d 123, 131 (D.D.C. 2013).  The same cannot be said of the allegations contained in Plaintiff's
Amended Complaint.  Accordingly, the court finds that venue is proper in this judicial district.

**B.   Capacity to Sue**

Next, Defendants argue that "[o]nly the Individual Defendants may bring suit on behalf of
Plaintiff and therefore the entire complaint should be struck."  Defs.' Mem. at 13.  The premise
for that argument is the legality of the merger.[2]  The D.C. Court of Appeals's decision in *George*,
however, defeats that premise.  The court's affirmance of Judge Nash's judgment means that
Jericho DC's Board now consists of those still-living persons who were members of its Board

---

properly served by hand delivery upon her husband at their home address.  *See* Pl.'s Opp'n Mot., ECF No. 17, Ex. 1,
ECF No. 17-1, at 2.

[2] More specifically, it is based on a court ruling from the Circuit Court for Prince George's County, which declared
Jericho Maryland's Board members the proper board members of the Church.  *See* Defs.' Mem. at 13.  That decision,
however, was reversed by the Maryland Court of Special Appeals, which found that there was a genuine dispute of
material fact as to whether the Board of Jericho DC was properly reconstituted on March 15, 2009.  Defs.' Mot., Ex.
1, ECF No. 15-3, at 10–16; *see also Bank of Am. v. Jericho Baptist Church Ministries, Inc.*, No. 15-02953, 2016 WL
4721257, at *8 (D. Md. Sept. 9, 2016) (summarizing history of Maryland state court litigation).

before March 15, 2009. They are: William A. Meadows, Dorothy L. Williams, and Joel R. Peebles. *See George*, 146 A.3d at 411–12. Accordingly, Defendants' contention that only the Individual Defendants may bring suit on behalf of Jericho DC fails.

C.     **Equitable Estoppel**

Next, Defendants maintain that all Plaintiff's claims should be dismissed on the ground of "equitable estoppel." Defs.' Mem. at 19–21. As a general matter, the doctrine of equitable estoppel prevents one litigant from advancing a claim or defense against another party when that other party detrimentally altered his or her position based on the litigant's misrepresentation or omission of a material fact. *See* 33 CHARLES A. WRIGHT & CHARLES H. KOCH, JR., FEDERAL PRACTICE AND PROCEDURE § 8407 (2006).

Defendants contend that none of them, except Williams, executed the Board resolution— known as Resolution 1-09—which reconstituted the Board of Jericho DC, and all of them relied on the validity of that Resolution in their future actions. From that predicate, they contend, the "Individual Defendants dedicated years of their lives to service because of their reliance on Resolution 1-09 . . . . [and] Jericho D.C. cannot now seek to hold others liable." *Id.* at 20.

Defendants' argument cannot succeed, however, because it fundamentally is at odds with Judge Nash's decision and the Amended Complaint's allegations. The D.C. Court of Appeals affirmed Judge Nash's finding that Resolution 1-09 was invalid because (1) one member of Jericho DC's then-Board—William Meadows—had executed Resolution 1-09 under false pretenses, and (2) another member, Joel Peebles, had not received notice of the meeting at which the resolution was adopted. *See* 146 A.3d at 410, 419–20. The Amended Complaint goes further and accuses the Individual Defendants of successfully conspiring to remove Meadows and another Board member, Anne Wesley; to exclude Joel Peebles from the meeting at which Resolution 1-09 was

6

executed; and to hide Resolution 1-09's execution for another 18 months.  Am. Compl. ¶¶ 15–19, 21–22.  Viewing those alleged facts in the light most favorable to Plaintiff, the Individual Defendants' effort to shield themselves from liability because they purportedly relied on Resolution 1-09 is a non-starter.

### D.     Failure to State a Claim

Having disposed of Defendants' arguments for dismissal of the Amended Complaint in its entirety, the court now turns to Defendants' arguments concerning the sufficiency of Plaintiff's pleading.  Plaintiff asserts ten federal and state common law claims:  (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts I through III); (2) fraud (Count IV); (3) conversion (Count V); (4) breach of fiduciary duty (against Defendant Williams only) (Count VI); (5) usurpation of corporate opportunity (against Defendant Williams only) (Count VII); (6) trademark infringement (Count VIII); (7) unjust enrichment (Count IX); and (8) civil conspiracy (Count X).  The court will first address Defendants' arguments concerning Plaintiff's RICO claims and then turn to the common law claims.

#### 1.     *RICO (Counts I–III)*

Defendants make two arguments regarding Plaintiff's RICO claims.  First, they argue that "Plaintiff has failed to allege how any conduct undertaken by any of the Defendants constitutes racketeering activity as defined in" the RICO statute, 18 U.S.C. §§ 1961–1968.  Defs.' Mem. at 21.  Second, they assert that "Plaintiff has not alleged any of the other necessary elements for a RICO claim under either 18 U.S.C. § 1962(b) or (c)."  *Id.*  The court will consider the first argument, but not the second.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."  *N.Y. Rehab. Care Mgmt., LLC v. N.L.R.B.*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (internal quotation marks omitted).  RICO is a complex

statute, *see Tafflin v. Leavitt*, 493 U.S. 455, 465 (1990) (acknowledging the "complexities of civil RICO actions"), and Defendants' catch-all contention that Plaintiff has failed to plead "other necessary elements" of a RICO claim is too thinly made for this court to address it in a meaningful way.

Turning then to the Defendants' argument that Plaintiff has failed to plead "racketeering activity," the court rejects it. As relevant here, RICO defines "racketeering activity" to include any act "indictable" under, among other laws, certain federal criminal statutes designated under 18 U.S.C. § 1961(1). *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481–82 (1985). Plaintiff here relies on the mail and wire fraud statutes, as well as fraud relating to access devices, *see* 18 U.S.C. § 1029, and bank fraud, *see* 18 U.S.C. § 1344, to state a plausible claim under RICO. The court agrees with Plaintiff that the acts alleged make out indictable fraud offenses.

"Sections 1341 and 1343 reach any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *Carpenter v. United States*, 484 U.S. 19, 27 (1987). "[T]he words 'to defraud' in the mail fraud statute have the 'common understanding' of 'wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" *Id.* (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)). Additionally, "[t]he concept of 'fraud' includes the act of embezzlement, which is 'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.'" *Id.* (quoting *Grin v. Shine*, 187 U.S. 181, 189 (1902)).

The Amended Complaint's allegations, when viewed in the light most favorable to Plaintiff, make out indictable fraud offenses. Plaintiff alleges, in essence, a scheme by the Individual Defendants to usurp the corporate identity and assets of Jericho DC. The Individual

Defendants are alleged to have conspired with one another and others to fraudulently secure the resignations of two Board members, William Meadows and Anne Wesley, *see* Am. Compl. ¶ 15; to purposely exclude another Board member, Joel Peebles, from Board meetings by failing to notify him of such meetings, *see id.* ¶ 16; to surreptitiously reconstitute the Board without notifying Meadows, Wesley, and Peebles, *see id.* ¶¶ 19–20; to willfully conceal the alteration of the Board from Meadows, Wesley, Peebles, and others for 18 months, *see id.* ¶¶ 21–22; and to improperly obtain control over millions of dollars of Jericho DC's assets through a merger that lacked approval from its rightful Board members, *see id.* ¶¶ 28–29.  Additionally, once Defendants obtained control of Jericho DC, certain Individual Defendants are accused of "illegally spen[ding] monies from Jericho DC's multiple bank accounts."  *Id.* ¶ 45.  For instance, Denise Killen allegedly made cash withdrawals from Jericho DC bank accounts, wrote checks to herself or her husband, or made credit card payments totaling nearly $85,000 for her personal use.  *Id.* ¶¶ 47–48.  Similarly, Clarence Jackson allegedly "received nearly $250,000 in unexplained payments from Jericho's DC's corporate bank accounts."  *Id.* ¶ 49.  Assuming the foregoing allegations to be true, as the court must at this stage, the court finds that Plaintiff has sufficiently alleged "racketeering activity" for purposes of its civil RICO claims.[3]

### 2.     *Common Law Claims*

Before turning to the merits of Plaintiff's common law claims, the court must address whether District of Columbia or Maryland law applies.  Defendants' briefing assumes that Maryland law applies to all common law claims, *see* Defs.' Mem. at 12–19, while Plaintiff's briefing vacillates between both, *compare* Pl.'s Opp'n at 22, 24 (applying D.C. law to fraud and

---

[3] In their Reply brief, Defendants argue for the first time that the Amended Complaint also fails to make out a "pattern" of racketeering activity.  Defs.' Reply, ECF No. 19, at 12.  The court need not, however, consider an argument raised for the first time in a reply brief and declines to do so.  *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008).

breach of fiduciary duty claims), *with id.* at 23–24 (applying Maryland law to usurpation of corporate opportunity and conversion claims).

This court must apply the District of Columbia's choice-of-law rules in determining what law applies. *See Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) ("As a general matter, we must apply the choice-of-law rules of the jurisdiction in which we sit—namely, the District of Columbia."). "D.C. choice-of-law rules require that we apply the tort law of the jurisdiction that has the 'most significant relationship' to the dispute." *Id.* (quoting *Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 180 (D.C. 2006)). That inquiry requires the court to consider "'where the injury occurred,' 'where the conduct causing the injury occurred,' 'the domicile, residence, nationality, place of incorporation and place of business of the parties,' and 'the place where the relationship is centered.'" *Id.* (quoting *Washkoviak*, 900 A.2d at 180).

Taken together, the foregoing factors point to applying District of Columbia law. The injury at issue occurred in the District of Columbia to a District of Columbia nonprofit corporation. Although the Amended Complaint does not identify precisely where two critical events took place—the March 15, 2009, meeting when the Board was reconstituted, and the November 2010 decision to merge with Jericho Maryland—a substantial event giving rise to the injury did occur in the District of Columbia—the filing of the Articles of Merger and the Plan of Merger. *See* Am. Compl. ¶ 29. And, while the parties hail from various jurisdictions, their relationship is "centered" at least in part in the District of Columbia, where Jericho DC was originally founded and incorporated. Therefore, for purposes Defendants' motion, the court will apply District of Columbia law to Plaintiff's common law claims.

a.     Fraud (Count IV)

Under District of Columbia law, to make out a claim of fraud "a plaintiff must allege facts showing that a person or entity '(1) made a false representation of or willfully omitted a material fact; (2) had knowledge of the misrepresentation or willful omission; (3) intended to induce [another] to rely on the misrepresentation or willful omission; (4) the other person acted in reliance on that misrepresentation or willful omission; and (5) suffered damages as a result of [that] reliance.'" *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015) (alteration in original) (quoting *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1198 (D.C. 1997)).  "A false representation may be either 'an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen.'" *Id.* at 1131 (quoting *Rothenberg v. Aero Mayflower Transit Co.,* 495 F. Supp. 399, 406 (D.D.C. 1980)).  "Although the non-disclosure of material information may constitute fraud when there is a duty to disclose, 'mere silence does not constitute fraud unless there is a duty to speak.'" *Id.* (quoting *Sarete, Inc. v. 1344 U Street Ltd. P'ship*, 871 A.2d 480, 493 (D.C. 2005)).

Defendants' sole contention as to the sufficiency of Plaintiff's fraud claim is that "Plaintiff does not claim that any Defendant made any false representation to *Plaintiff*."  Defs.' Mem. at 14. The court disagrees.  Plaintiff alleges that on March 15, 2009, Defendants "presented a partially disclosed document's signature page to [two Board members] Williams Meadows and Anne Wesley to execute while representing that Betty Peebles," the Church's founder and another Board member, "requested their immediate signatures."  Am. Compl. ¶ 16.  That document—Resolution 1-09—unbeknownst to Meadows, Wesley, or Peebles, a Board member who had not received notice of the action, had the effect of securing Meadows' and Wesley's resignations from the Board, removing Peebles from the Board, and adding to the Board each of the Individual

11

Defendants (except Defendant Williams, who already was a Board member).  *Id.* ¶¶ 15, 19;

*George*, 146 A.3d at 410.  According to Plaintiff, the Individual Defendants thereafter did not

disclose their Board membership for another 18 months, until after Betty Peebles' death in October

2010.  *Id.* ¶ 22.  Indeed, Plaintiff expressly alleges that the "legitimate" Jericho DC Board,

including Meadows, Wesley, and Joel Peebles, held a meeting on September 21, 2010, at which

no one disclosed any information about the reconstituted Board.  *Id.* ¶ 21.  Defendant Williams

was at the meeting but remained silent.  *Id.*  The remaining Individual Defendants, although they

did not attend, also concealed their Board membership from Meadows, Wesley, and Peebles.

The court has little trouble concluding that the foregoing acts, if proven to be true,

constitute fraud under District of Columbia law.  Defendants are accused of devising a scheme to

present a formal Board resolution for signature to then-Board members under false pretenses and

without fully disclosing its true nature and purpose, with the objective of taking control over the

Board of Jericho DC.  They then hid their putative Board membership from Plaintiff's "legitimate"

Board members for a year-and-a-half, even though Resolution 1-09 ostensibly imposed upon them

fiduciaries obligations to Jericho DC.  *See Family Fed'n*, 129 A.3d at 251 ("It is of course a 'basic

principle' of corporate law 'that directors are subject to the fundamental fiduciary duties of loyalty

and disinterestedness.'" (quoting *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d

1171, 1174 (Del. 1988))).  Such allegations satisfy the elements of common law fraud.

b.      Conversion (Count V)

Next, with respect to Plaintiff's conversion claim, Defendants do not strictly argue that

Plaintiff has failed to sufficiently plead the elements.  Instead, they contend that the conversion

claim fails as a matter of law because "the courts of Maryland determined that Defendants, not

Plaintiff, would be in control of the property."  Defs.' Mem. at 16.  But that argument fails.  First,

the Maryland court order that Defendants cite was reversed on appeal and, on remand, the case was stayed pending the outcome of *George*. *See Bank of Am. v. Jericho Baptist Church Ministries, Inc.*, No. 15-02953, 2016 WL 4721257, at *8 (D. Md. Sept. 9, 2016) (summarizing history of Maryland state court litigation). Second, in *George*, the D.C. Court of Appeals affirmed Judge Nash's determination that Jericho DC's merger with Jericho Maryland was invalid. The court also affirmed Judge Nash's order of relief that invalidated actions by Jericho Maryland's Board over property that "formerly belong[ed] to, or derived from," Jericho DC and barred the Individual Defendants in this case from "exercising ownership or control over" those assets. *George*, 146 A.3d at 422. Accordingly, no present court order supports Defendants' position that "Defendants, not Plaintiff, would be in the control of the property." Plaintiff may proceed with its conversion claim.

> c.    Breach of Fiduciary Duty against Defendant Williams (Count VI)

With regard to Plaintiff's breach of fiduciary duty claim against Defendant Williams, Defendant Williams' primary contention is that such a claim does not exist under Maryland law. Defs.' Mem. at 16. But, as already discussed, District of Columbia law applies to this action and such a claim is cognizable under District of Columbia law. *See, e.g.*, *Randolph v. ING Life Ins. and Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009).

Defendant Williams also argues that her reliance on the duly adopted Resolution 1-09 by Jericho DC's Board precludes a breach of fiduciary claim against her. Defs.' Mem. at 17. That argument, however, ignores the Amended Complaint's actual allegations, which assert that the act of adopting Resolution 1-09 was itself a breach of Defendant's fiduciary obligations to Jericho DC. *See* Am. Compl. ¶¶ 27–28, 33.

Finally, Defendant Williams contends that any breach-of-fiduciary claim is time barred. Under District of Columbia law, a three-year limitations period applies to causes of action for breach of fiduciary duty. *See Klayman v. Barmak*, 634 F. Supp. 2d 56, 64 (D.D.C. 2009). Defendant Williams contends that, because Jericho DC went out of existence as a result of the merger on December 14, 2010, she cannot be held liable to Jericho DC for any conduct occurring after that date and any liability for acts occurring before that date would be time-barred. Defs.' Mem. at 9, 16. That argument proves unavailing, however, because it ignores "the maxim that no [person] may take advantage of his [or her] own wrong.'" *Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C. 1987) (quoting *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959)). The principle may be "employed to bar inequitable reliance on statutes of limitations." *Id.* (quoting *Glus*, 359 U.S. at 233). Applying that principle here, Defendant Williams cannot escape liability by erecting a limitations bar based on wrongfully effecting a merger that, at least temporarily, put Jericho DC out of existence. Accordingly, at this stage, the court cannot find that Jericho DC's breach of fiduciary duty claim against Defendant Williams is time barred.

> d.   Usurpation of Corporate Opportunity against Defendant Williams (Count VII)

In Count VII, Plaintiff asserts a "usurpation of corporate opportunity" claim against Defendant Williams only. Although such a tort is well established under Maryland law, *see, e.g.*, *Maryland Metals, Inc. v. Metzner*, 382 A.2d 564 (1978), its rootedness under District of Columbia law is less settled, *see Havilah Real Property Servs., LLC v. VLK, LLC*, 108 A.3d 334, 339 n.6 (D.C. 2015) (recognizing doctrine in footnote); *Robinson v. R & R Pub., Inc.*, 943 F. Supp. 18, 21 (D.D.C. 1996) ("assum[ing] the District of Columbia would follow the general and well-established corporate opportunity doctrine"). For present purposes, the court will assume that such

a tort exists under District of Columbia law[4] and will address Defendants' contentions for dismissal. Just as she did with respect to the breach of fiduciary duty claim, Defendant Williams argues that Plaintiff's usurpation claim must be dismissed because she relied on Resolution 1-09 and any such claim is time barred. Defs.' Mem. at 15. The court, however, rejects those arguments for the same reasons discussed above. Plaintiff therefore may proceed with her usurpation of corporate opportunity claim.

e.   Common Law Trademark Infringement (Count VIII)

Next, Defendants seeks dismissal of Plaintiff's common law trademark infringement claim. As with Plaintiff's other tort claims, the court will analyze whether Plaintiff plausibly alleged its trademark infringement claim under District of Columbia law, not Maryland law. *See Ward One Democrats, Inc. v. Woodland*, 898 A.2d 356, 361 (D.C. 2006) (discussing common law trademark infringement under District of Columbia law). Defendants make only two arguments concerning the infringement claim: (1) the statute of limitations has expired, and (2) Plaintiff "has not alleged . . . that it suffered any damages resulting" from the alleged infringement. *See* Defs.' Mem. at 18.[5] The court disagrees with both contentions.

The court rejects Defendants' statute-of-limitations argument for the same reason previously explained—Defendants' alleged wrongdoing equitably precludes reliance on the statute of limitations. *See Interdonato*, 521 A.2d at 1135–36. As for the second argument—that Plaintiff

---

[4] The doctrine of usurpation of corporate opportunity itself is "quite narrow." *Yah Kai World Wide Enterps., Inc. v. Napper*, No. 11-2174, 2016 WL 3647840, at *23 (D.D.C. July 3, 2016) (applying Maryland law). It is an "an offshoot of the general duty of loyalty owed by corporate officers, directors and upper-level management employees," and it precludes such persons from "from diverting unto themselves opportunities which in fairness ought to belong to the corporation." *Id.* (quoting *Maryland Metals*, 382 A.2d at 572 & n.5).

[5] In their Reply brief, Defendants question whether the name "Jericho" can be trademarked. Defs.' Reply, ECF No. 19, at 9. Because Defendants did not raise that argument in their opening brief, the court will not consider it. *See McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair . . ., but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citation omitted)).

has failed to allege damages—the court finds that Plaintiff has sufficiently pleaded injury stemming from the claimed trademark infringement to survive a motion to dismiss.  An injury arising from trademark infringement includes "dilution of the distinctiveness of the [particular] trademark and loss of control over its reputation, harms not compensable in money damages." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomm. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).   Here, Plaintiff alleges that Defendants' use of its mark has harmed its credit reputation, *see* Am. Compl. ¶ 54, and caused substantial parishioner confusion, *id.* ¶¶ 109–10.  Therefore, Plaintiff has stated a plausible claim for trademark infringement.

### f.   Unjust Enrichment (Count IX)

Moving on to Plaintiff's unjust enrichment claim, Defendants tersely argue that "Plaintiff has not and cannot allege the requisite elements."  Defs. Mot. at 18.  The court disagrees.  The doctrine of unjust enrichment applies when "a person retains a benefit (usually money) which in justice and equity belongs to another."  *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005).  The recipient of such a benefit has "a duty to make restitution to the other person 'if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the recipient] to retain it.'"  *Id.* (quoting Restatement of Restitution § 1 cmt. c (Am. Law Inst. 1937)).  The elements of an unjust enrichment claim are "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust."  *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).

Here, Plaintiff has alleged not only that Jericho Maryland misappropriated and retained Jericho DC's assets, but also that at least two Individual Defendants personally enriched themselves at Jericho DC's expense.  *See* Am. Compl. ¶¶ 47–48 (alleging cash withdrawals by

Defendant Killen from Jericho bank accounts); *id.* ¶¶ 49 (alleging Defendant Jackson's receipt of $250,000 in unexplained payments from Jericho DC). Those allegations are sufficient to permit Plaintiff to go forward with its unjust enrichment claim.[6]

g.      Civil Conspiracy (Count X)

Defendants argue that Plaintiff's civil conspiracy claim must be dismissed because Plaintiff has failed to plead an underlying tort. Defs.' Mem. at 19; *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009) ("A claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied."). Because the court already has found otherwise, Plaintiff's civil conspiracy claim may proceed.

E.      **Transfer to the District of Maryland**

Finally, the court denies Defendants' request to transfer this matter to the District of Maryland. Defs.' Mem. at 12–13. The court has weighed the public and private interests, as required under 28 U.S.C. § 1404, and has considered the "substantial deference" owed to Plaintiff's choice of forum, and declines to transfer this matter. *See Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 310–11 (D.D.C. 2015) (setting forth legal standard for motions to transfer).

---

[6] The court recognizes that Plaintiff has not alleged that Defendants Boswell, McClam-Magruder, and Williams obtained Jericho DC's assets and used them for personal gain. At this time, however, the court will not dismiss the unjust enrichment claim against those Defendants, but instead, will consider dismissal of those claims at the summary judgment stage.

## IV.      CONCLUSION AND ORDER

In sum, the court concludes Defendants advance no persuasive argument why the court is divested of jurisdiction, venue is lacking, or dismissal of Plaintiff's Amended Complaint is warranted.  The court also declines to transfer this matter to the District of Maryland.  Thus, the court denies Defendants' Motion to Dismiss in full.


Dated:  December 9, 2016                    Amit P. Mehta
                                            United States District Judge