## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

——————————————————————————————
|  | ) |
| :-- | :-- |
| **JERICHO BAPTIST CHURCH MINISTRIES,** | ) |
| **INC. (DISTRICT OF COLUMBIA),** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | )     **Case No. 16-cv-00647 (APM)** |
|  | ) |
| **JERICHO BAPTIST CHURCH MINISTRIES,** | ) |
| **INC. (MARYLAND), et al.,** | ) |
|  | ) |
| **Defendants.** | ) |

——————————————————————————————

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Jericho Baptist Church Ministries, Inc. ("Jericho DC") brings a variety of federal and state claims against Jericho Baptist Church Ministries, Inc. ("Jericho Maryland") and its board members Denise Killen, Clifford Boswell, Gloria McClam-Magruder, Clarence Jackson, and Dorothy Williams ("Individual Defendants").  Plaintiff claims that Defendants wrongfully wrested control over Jericho DC, transferred its corporate identity and possessions to Jericho MD, and misappropriated its assets for personal gain.  Defendants seek summary judgment on all claims. For the reasons that follow, the court grants in part and denies in part Defendants' motion.  The court notes, however, that several critical legal issues have been inadequately briefed or wholly ignored by the parties.  This Memorandum Opinion & Order resolves only those factual and legal issues that are sufficiently developed at this juncture.  The court will issue a separate Order identifying the additional issues that must be addressed before this case may proceed to trial.

## II.    BACKGROUND

### A.    Factual Background

This controversy began in March 2009 when several Individual Defendants executed a resolution—Board Resolution 1-09—which purported to install a new slate of members to Jericho DC's Board of Trustees, and ousted several longstanding trustees.  The legality of this transaction, which is the linchpin of the instant lawsuit, was fully and finally adjudicated by way of a bench trial by the District of Columbia Superior Court in *George v. Jackson*, No. 2013CA0007115, 2015 WL 12601903 (D.C. Super. Ct. July 7, 2015), *aff'd*, 146 A.3d 405 (D.C. 2016).  Defendants in this case were also defendants in *George*.  *See George*, 146 A.3d at 411 (listing the defendants in that case).  This court adopts the following factual findings and conclusions of law in that case, as they satisfy the elements of non-mutual offensive collateral estoppel.  *See Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX 15-02953, 2016 WL 4721257, at *4–9 (D. Md. Sept. 9, 2016) (explaining in detail why the *George* court's factual findings and conclusions of law meet the District of Columbia's standards for non-mutual offensive collateral estoppel).

As of March 2009, Jericho DC's Board of Trustees ("Board") consisted of five individuals: Betty Peebles (the co-founder and leader of the church); Joel Peebles (Betty Peebles's son and one of the church's pastors); William Meadows; Anne Wesley; and Defendant Dorothy Williams. *George*, 2015 WL 12601903 ¶¶ 4, 21.  On March 15, 2009, four of the five Board members— Betty Peebles, William Meadows, Anne Wesley, and Defendant Williams—signed Resolution 1-09, which purportedly reconstituted Jericho D.C.'s Board.  *Id.* ¶ 5; *see also* Pl.'s Exhibits to Am. Compl., ECF No. 9-1 [hereinafter Am. Compl. Exhibits], Ex. 1, Resolution 1-09 of Board of Trustees [hereinafter Resolution 1-09], at PDF p. 2.  The new Board consisted of carry-over trustees Betty Peebles and Defendant Williams, as well as seven newly named trustees, including

Defendants Gloria McClam-Magruder, Denise Killen, and Clarence Jackson. *George*, 2015 WL 12601903 ¶¶ 5, 21; Resolution 1-09. By implication, Joel Peebles, Anne Wesley, and William Meadows were removed from the new Board. *George*, 2015 WL 12601903 ¶¶ 5, 21.

The March 15, 2009 meeting "was not a typical meeting of the Board of Trustees." *Id.* ¶ 27. Board member Meadows, for instance, received "no advance notice of a Board meeting"; he was summoned to Betty Peebles's office, handed a document by Defendant Killen, and told that Ms. Peebles wanted him to sign it. *Id.* ¶ 28. Meadows "assumed that the document was a routine matter related to the administration of the church, and he had no idea that by signing the document he was resigning from the Board and voting to elect a new slate of trustees." *Id.* No meeting was ever called to order, no agenda was ever presented, and no vote was ever called. *Id.* ¶¶ 28, 29. Joel Peebles, who also was removed from the Board by Resolution 1-09, had no notice of the decision whatsoever. In fact, he was "deliberately excluded and deprived of notice" of the Board meeting in which Resolution 1-09 was adopted. *Id.* ¶ 23. The decision to exclude Joel Peebles "was not an oversight, but rather was a calculated decision." *Id.* ¶ 21.

Unaware that he had been excluded from the Board, Joel Peebles called a Board meeting in September 2010 to address issues arising from his mother's imminent death. *Id.* ¶ 9. The meeting was attended by William Meadows, Anne Wesley, and Defendant Williams. *Id.* At the meeting, Defendant Williams made no mention of Resolution 1-09, "allow[ing] Joel R. Peebles, William A. Meadows, and Anne Wesley to proceed with the meeting as if they were, in fact, members of the Board of Trustees." *Id.* When asked about this at trial, Defendant Williams explained "it wasn't my place" to advise Peebles, Meadows, and Wesley that they were no longer members of the Board. *Id.*

Betty Peebles passed away on October 12, 2010. *Id.* ¶ 12. Less than a month later, on November 1, 2010, the five Individual Defendants in this case and one other person incorporated a new entity in Maryland under the same name as the District of Columbia entity, "Jericho Baptist Church Ministries, Inc." *Id.* ¶ 11; *see also* Am. Compl. Exhibits, Ex. 5, Articles of Incorporation of Jericho MD, at PDF pp. 33, 36. That same day, Articles of Merger were filed with the District of Columbia Department of Regulatory Affairs indicating that, pursuant to a vote by the Board of Trustees of Jericho DC on October 30, 2010, Jericho DC was merged into Jericho MD, and that the surviving entity, Jericho MD, would no longer be governed by the laws of the District of Columbia. *See George*, 2015 WL 12601903 ¶ 11; *see also* Am. Compl. Exhibits, Ex. 3, Articles of Merger, at PDF p. 25; *id.*, Ex. 4, Certificate of Merger, at PDF p. 30. Various assets of Jericho DC, including its bank accounts, tax identification number, and financial holdings, were then transferred to Jericho MD. *See* Defs.' Statement of Material Facts Not in Dispute, ECF No. 69 [hereinafter Defs.' SOMF], ¶¶ 103–105 (listing various bank accounts held by Jericho MD that were previously held by Jericho DC or contained funds belonging to Jericho DC); Defs.' Mot., App'x of Exhibits, ECF No. 66-1 [hereinafter Exhibits to Defs.' Mot.], Ex. O, Corrected Mem. Op. & Order, at PDF p. 149 (stating that Jericho MD opened an account at Citibank and transferred millions of dollars by check from Jericho DC's bank accounts using Jericho DC's tax identification number); Pl.'s Exhibits to Pl.'s Opp'n, ECF No. 72 [hereinafter Exhibits to Pl.'s Opp'n], Ex. 2, Aff. of Denise Killen, ECF No. 72-3 (suggesting that Jericho MD used Jericho DC's tax identification number until April 27, 2016).

These actions set off a firestorm of litigation over control of the church and its assets. *See Bank of America*, 2016 WL 4721257, at *2 (listing at least six separate lawsuits). The question of which entity rightfully controls Jericho Baptist Church Ministries and its assets was fully and

finally adjudicated in *George*, 2015 WL 12601903. In that case, The Honorable Stuart G. Nash conducted a three-day bench trial in D.C. Superior Court and concluded that the "calculated decision" to exclude Joel Peebles from the vote on Resolution 1-09 rendered the resolution invalid, which, in turn, rendered invalid all subsequent "actions of the successor Board of Trustees" that were taken under color of Resolution 1-09. *Id.* ¶¶ 21, 23, 33. The court therefore held that the newly constituted Board's approval of the merger of Jericho DC into Jericho MD was invalid and ordered Defendants to "refrain from exercising ownership or control over any corporate assets of Jericho Maryland formerly belonging to, or derived from, the corporate assets of Jericho DC." *Id.* at *7. On September 22, 2016, the D.C. Court of Appeals affirmed Judge Nash's findings and judgment in full. *See generally George*, 146 A.3d 405.

## B.     Procedural Background

Plaintiff Jericho DC brought this action in D.C. Superior Court on March 23, 2016, and Defendants removed the case to federal court shortly thereafter. *See* Notice of Removal, ECF No. 1. Plaintiff filed its Amended Complaint on April 22, 2016. *See* Am. Compl., ECF No. 8 [hereinafter Am. Compl.]. The Amended Complaint includes nine counts. Counts One through Three allege that Defendants are liable for civil violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. *Id.* ¶¶ 70–89. Count IV alleges that Defendants engaged in common law fraud by dishonestly creating Jericho MD and appropriating control over Jericho DC's governance and assets. *Id.* ¶¶ 90–93. Count V accuses the Individual Defendants of conversion, *id.* ¶¶ 99–100; Counts VI and VII allege that Defendant Williams breached her fiduciary duties to Jericho DC and usurped Jericho DC's corporate opportunities, *id.* ¶¶ 94–98, 101–106; and Counts VIII and IX accuse the Individual Defendants of common law trademark violations and unjust

enrichment, *id.* ¶¶ 107–116. In addition, the Complaint alleges that the Individual Defendants conspired to commit other common law torts alleged in the Complaint. *Id.* ¶¶ 115–16.[1]

Defendants originally sought dismissal of the Amended Complaint, which the court denied in full on December 9, 2016. *See* Mem. Op. & Order, ECF No. 24. As relevant here, the court held that District of Columbia law governed Plaintiff's common law claims, *see id.* 9–10, and that Plaintiff had stated a claim as to each count, *id.* at 7–17. After Defendants filed an answer, the court set a schedule for discovery to proceed in the matter. *See* Order, ECF No. 29.

Following a lengthy and contentious period of discovery, Defendants filed the instant Motion for Summary Judgment on July 5, 2019. *See* Defs.' Mot. for Summ. J., ECF No. 66 [hereinafter Defs.' Mot.]. Plaintiff opposed Defendants' Motion, *see* Pl.'s Opp'n to Defs.' Mot., ECF No. 71, at 13 [hereinafter Pl.'s Opp'n], and briefing concluded on August 22, 2019, *see* Defs.' Reply in Supp. of Defs.' Mot., ECF No. 73.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015). In assessing a motion for summary judgment, the court considers all relevant evidence presented by the parties. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The court views the facts in the light most favorable to the nonmoving party and draws

---

[1] Though Plaintiff's civil conspiracy claim is labeled Count X in the Complaint, *see* Am. Compl. ¶¶ 115–16, Plaintiff's summary judgment brief confirms that the charge is not an independent count and is instead pled as a "conduit . . . to assert one or more claims against others acting conspiratorially." *See* Pl.'s Opp'n to Defs.' Mot., ECF No. 71, at 13.

all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the court determines "no reasonable jury could reach a verdict in [the nonmovant's] favor," then summary judgment is appropriate, *Wheeler v. Georgetown University Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016); however, courts are "not to make credibility determinations or weigh the evidence," *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

## IV. DISCUSSION

### A. RICO Violations – All Defendants (Counts I–III)

Plaintiff asserts that Defendants engaged in, and conspired to engage in, a pattern of mail and wire fraud intended to unlawfully wrest control of Jericho DC's business and finances in violation of RICO's civil liability provisions. *See* Am. Compl. ¶¶ 70–89. The RICO statute imposes civil liability on any person who, "through a pattern of racketeering activity . . . acquire[s] or maintain[s], directly or indirectly, any interest in or control of any enterprise," 18 U.S.C. § 1962(b); "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce," who "conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," *id.* § 1962(c); and any person who conspires to violate either of these provisions, *id.* § 1962(d). Racketeering activity includes, among other activities, any predicate act "indictable" under various federal criminal statutes specified in 18 U.S.C. § 1961(1), including mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343); *see also Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 153 (D.D.C. 2016) (explaining that the term "[r]acketeering activity" is "also known as 'predicate acts' or 'predicate offenses'"), *aff'd*, 728 F. App'x 12 (D.C. Cir. 2018).

Defendants seek summary judgment on Plaintiff's RICO claims on three grounds. First, Defendants argue "[i]t was the intentional acts of [Jericho DC's] co-founder, Betty Peebles, . . .

7

that caused the implementation of Resolution 1-09." Defs.' Mot. at 14. They argue that Ms. Peebles's decision was based on an "internal family dispute," and that "Defendants' action of carrying out the wishes of . . . Betty Peebles does not equate to fraud, conspiracy, and/or RICO predicates." *Id.*

Regardless of whether Defendants were "carrying out" Ms. Peebles's directions, there is still a genuine issue of material fact as to whether Defendants engaged in, or conspired to engage in, any predicate offense that would form the basis for Plaintiff's RICO claims. Plaintiff alleges that Defendants engaged in the predicate offense of wire fraud, Pl.'s Opp'n at 7–8, and there is evidence to support that claim. *See Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 77 (D.D.C. 2019) (explaining that the "elements of . . . . wire fraud are (1) a scheme to defraud, and (2) use of . . . wires for the purpose of executing the scheme." (internal quotation marks omitted)), *aff'd sub nom. Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam Ethiopian Orthodox Tewhado Religion Church*, No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020)). Based on Judge Nash's findings of fact alone, which Defendants are estopped from contesting in this action, a reasonable factfinder could determine that the Individual Defendants concocted a scheme whose object was to steal the assets of Jericho DC through fraudulent means, including by deceiving Meadows into resigning from the Board, purposely excluding Joel Peebles from the March 2009 Board meeting, and failing to disclose the adoption of Resolution 1-09 to unwittingly deposed Board members. *See George*, 2015 WL 1261903 ¶¶ 5–11, 21, 23, 28. Moreover, there is evidence that Defendants used wire communications to further the object of their scheme. For instance, Plaintiff points to a facsimile from Jericho MD's attorney to the Internal Revenue Service stating that Jericho DC had been merged into Jericho MD because the church's "operation is primarily conducted in Maryland," and that Jericho MD would "continue to use" Jericho DC's tax

identification number. *See* Am. Compl. Exhibits, Ex. 6, Facsimile from Isaac Marks, at PDF p. 40. These undisputed acts by Defendants suffice, at the summary judgment stage, to establish a genuine dispute of material fact regarding the predicate offense of wire fraud.

Second, Defendants argue that they are entitled to summary judgment on Plaintiff's RICO claims because Plaintiff has identified "no evidence that Plaintiff's damages were the proximate result of Defendants' actions." Defs.' Mot. at 11. However, Judge Nash's findings of fact are again dispositive. Judge Nash found that the Individual Defendants in this case each participated in actions which resulted in the merger of Jericho DC into Jericho MD, thereby stripping Jericho DC of its name, corporate identity, and various assets. *See George*, 2015 WL 12601903 ¶¶ 5, 9, 11, 28, & p. *7. Furthermore, there is evidence that Jericho MD acquired and used Jericho DC's tax identification number and bank accounts, and transferred other of Jericho DC's assets into various bank accounts owned by Jericho MD. *See, e.g.*, Exhibits to Pl.'s Opp'n, Ex. 2, Aff. of Denise Killen, ECF No. 72-3; Am. Compl. Exhibits, Ex. 6, Facsimile from Isaac Marks, PDF pp. 40–41; Defs.' SOMF ¶¶ 103–105; Defs.' Mot., Ex. O, ECF No. 66-1, at PDF p. 149. Thus, a jury could conclude based on the record evidence that Plaintiff's damages were proximately caused by Defendants' actions.[2]

Third, Defendants argue in a single sentence that summary judgment is warranted because Plaintiff "has provided no evidence of a pattern that would satisfy RICO requirements." *See* Defs.' Mot. at 16. Ordinarily, the court would treat this bare-bones, unsupported argument as forfeited. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("Mentioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it." (quoting *Schneider v. Kissinger*, 412 F.3d

---

[2] While Plaintiff may have already recovered some of these assets, there is no evidence demonstrating (and Defendants do not contend) that Plaintiff has been made entirely whole.

190, 200 n.1 (D.C. Cir. 2005))). Nevertheless, because proof of a pattern of racketeering activity is critical to making out a RICO claim, *see H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989); *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001), the court will give Defendants an opportunity to submit additional briefing on this issue. The court therefore defers ruling on Defendants' motion for summary judgment as to Counts I through III.

### B. Fraud – All Defendants (Count IV)

Plaintiff asserts that Defendants are liable for fraud because they intentionally or negligently made false representations as part of a scheme to "appropriate Plaintiff's corporate and legal identity including control over its finances." Am. Compl. ¶ 91. Under District of Columbia law, to make out a claim of fraud, "a plaintiff must . . . show that a person or entity (1) made a false representation of or willfully omitted a material fact; (2) had knowledge of the misrepresentation or willful omission; (3) intended to induce another to rely on the misrepresentation or willful omission; (4) the other person acted in reliance on that misrepresentation or willful omission; and (5) suffered damages as a result of that reliance." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130–31 (D.C. 2015) (cleaned up) (quoting *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1198 (D.C. 1997)). "A false representation may be either 'an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen.'" *Id.* at 1131 (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013)).

Defendants seek summary judgment on Plaintiff's fraud claim on two main grounds. First, Defendants argue that, like the RICO claims, Plaintiff's claim for fraud "must fail because it has not presented any evidence of provable damages and/or injury." Defs.' Mot. at 16. The court

rejects this argument for the same reasons previously discussed.[3]

Second, Defendants contend that Plaintiff has offered no evidence that Defendants engaged in any fraudulent activity because the "undisputed facts establish that it was the co-founder of Jericho Baptist Church [Betty Peebles] who implemented Resolution 1-09 . . . in an attempt to protect the church." Defs.' Mot. at 16. However, the evidence shows that the Individual Defendants, not just Betty Peebles, each had a hand in effectuating the takeover of Jericho DC; whether they were acting at Betty Peebles's behest is beside the point. *See George*, 2015 WL 12601903 ¶ 11; *see also* Am. Compl. Exhibits, Ex. 5, Articles of Incorporation of Jericho MD, at PDF p. 36–37; *id.*, Ex. 3, Articles of Merger, at PDF p. 26. Likewise, Ms. Peebles's ostensible good-faith intention to "protect the church," Defs.' Mot. at 16, does not mean that Defendants' actions were not fraudulent. Joel Peebles was "deliberately excluded and deprived of notice" of the meeting in which he was stripped of his board membership, *George*, 2015 WL 12601903 ¶ 23, and another former board member, William Meadows, was asked by Defendant Killen to sign Resolution 1-09 despite having "no idea that by signing the document he was resigning from the Board and voting to elect a new slate of trustees," *id.* ¶ 28. Over the next 18 months, none of the new Board members (including Defendants Denise Killen, Gloria McClam-Magruder, Clarence Jackson, and Dorothy Williams) made any effort to disabuse Peebles or Meadows of their misimpression that they were still trustees, even after Joel Peebles convened a meeting of "what he believed to be the Board," which Defendant Williams attended. *Id.* ¶ 9. As purported trustees of the reconstituted Jericho DC, these Individual Defendants had a fiduciary obligation to disclose

---

[3] Defendants argue that "Plaintiff's own expert stated that she can identify no fraudulent transactions in her report," *see* Defs.' Mot. at 17, but that report was focused only on transactions with a single bank. *See* Plaintiff's Initial Disclosures, ECF No. 37, Ex. 1, Preliminary Report Accounting of Select Bank Accounts Held by Jericho Baptist Church Ministries, ECF No. 37-1 ("[T]his report only covers activity that has been reviewed to date in four Bank of America, N.A. accounts."). As discussed, there is other evidence that Plaintiff has been injured by Defendants' fraudulent activities, even without resort to Plaintiff's expert report.

such material information.  *See Pyne v. Jamaica Nutrition Holdings Ltd.*, 497 A.2d 118, 132 (D.C. 1985) (holding that a corporate officer's "failure to disclose [material facts] to the company constituted fraud and a breach of his fiduciary duty to the company").  A jury could find, based on this evidence, that Defendants Denise Killen, Gloria McClam-Magruder, Clarence Jackson, and Dorothy Williams knowingly and intentionally made false representations to Jericho DC, or omitted material facts that they had duty disclose, and that Plaintiff relied on those representations to its detriment.[4]

The court finds otherwise with respect to Defendants Boswell and Jericho MD, however. Defendant Boswell was not a trustee of Jericho DC, and therefore had no duty to disclose material information to Jericho DC.  Nor is there any evidence that he affirmatively made any false representations to Jericho DC.  Likewise, there is no evidence that Jericho MD or its agents acting on its behalf made any false representations to Jericho DC.  While Plaintiff argues that Jericho MD made false statements to third parties, *see* Pl.'s Opp'n at 8, there is no indication that these statements were ever communicated to Jericho DC, or that Jericho DC acted in reliance on them. *See Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017) (stating that to prove fraud, "a plaintiff must show that the defendant, with the intent to deceive the plaintiff, knowingly made a false representation of a material fact on which *plaintiff* justifiably and detrimentally relied" (emphasis added)); *see also Exxon Mobil Corp. v. Albright*, 433 Md. 303, 334–36 (2013) (explaining that "[o]rdinarily, a plaintiff seeking recovery for fraud must prove that the defendant . . . made a false representation *to the person defrauded*" and that, though there are circumstances

---

[4] Defendants argue that summary judgment is warranted as to Defendant Gloria McClam-Magruder because "nowhere in the Amended Complaint . . . has Jericho DC alleged any fraud that was committed" by Ms. McClam-Magruder. See Defs.' Mot. at 18.  Defendant McClam-Magruder, however, was a purported Board member of Jericho DC just like the other Individual Defendants, and therefore had the same duty of loyalty as the other Board members.  *See George*, 2015 WL 12601903 ¶ 11.

in which a plaintiff may recover for fraudulent statements made to a third party, recovery is not permitted "without a demonstration that the plaintiff relied, either directly or indirectly, on the relevant misrepresentation" (internal quotations omitted)), *recons. granted in part on other grounds*, 433 Md. 502 (2013). Therefore, the court denies Defendants' motion as to Defendants Killen, McClam-Magruder, Jackson, and Williams, and grants their motion as to Defendants Boswell[5] and Jericho MD.

### C.    Conversion – Individual Defendants (Count V)

Plaintiff asserts that the Individual Defendants are liable for conversion because the Defendants "took control and possession of Plaintiff's church office building, schools, parking lots, furniture, books, papers and programs," as well as Plaintiff's "bank accounts, check accounts, and credit card accounts," "in a manner that was inconsistent with Plaintiff's ownership rights," and have "continue[d] to expend unauthorized church funds." Am. Compl. ¶ 100. The tort of conversion entails "an unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property." *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011).

Defendants seek summary judgment on Plaintiff's conversion claim because, they argue, Plaintiff's allegations that the Individual Defendants improperly used Jericho DC's funds are "wholly lacking in any factual support." Defs.' Mot. at 19. The court disagrees. Though Plaintiff has not substantiated any of its allegations that the Individual Defendants wrongfully misappropriated Jericho DC's assets for their *personal* benefit, *see* Am. Compl. ¶¶ 45–51, there is record evidence that shows that the Individual Defendants enabled Jericho MD to obtain control

---

[5] Plaintiff has also alleged that Defendant Boswell, along with the other Individual Defendants, is liable for conspiring to fraudulently take over Plaintiff's corporate identity and assets. *See* Am. Compl. ¶ 116. The court's ruling that Boswell is not personally liable for defrauding Plaintiff does not foreclose any vicarious liability he may have for conspiring with others to defraud Plaintiff. Plaintiff's conspiracy claim is discussed in greater detail below.

over much, if not all, of Jericho DC's property, including its name, bank accounts, real property, and tax identification number. A jury could conclude, based on these facts, that the Individual Defendants' acts of aiding Jericho MD in obtaining control over Jericho DC's assets was an unlawful conversion.[6] *See Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 121, 126 (D.D.C. 2014) (observing that, under District of Columbia law, a corporate officer may be held personally liable for corporation's acts of conversion if the officer "act[ed] with knowledge" that property belonged to another and "meaningfully participated" in the corporation's decision not to return it (internal quotation marks omitted)); 18 Am. Jur. 2d § 62 ("Any officer or director who aids, instigates, or assists in the conversion by a corporation becomes personally liable."); *see also* Restatement (Second) of Torts 222A, Illustrations 10, 23 (1965) (listing circumstances in which a party may be liable for conversion even though he does not personally possess the property); *cf. id.* § 233 ("[O]ne who as agent or servant of a third person disposes of a chattel to one not entitled to its immediate possession in consummation of a transaction negotiated by the agent or servant, is subject to liability for a conversion to another who, as against his principal or master, is entitled to the immediate possession of the chattel."). Defendants' motion is therefore denied as to Count V.

### D. Breach of Fiduciary Duty – Defendant Williams (Count VI)

Under District of Columbia law, a defendant may be held liable for breach of fiduciary duty when: "(1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach proximately caused an injury." *Hedgeye Risk Mgmt., LLC v. Heldman*,

---

[6] Individual Defendants Williams, McClam-Magruder, and Boswell separately seek summary judgment, arguing that "there are no allegations that [these Defendants] took or received any funds from Plaintiff." Defs.' Mot. at 19. The court rejects the argument insofar as there is evidence from which a jury could conclude that *all* the Individual Defendants, including Boswell, Williams, and McClam-Magruder, assisted Jericho MD with converting Plaintiff's assets.

412 F. Supp. 3d 15, 23 (D.D.C. 2019). Plaintiff alleges that Individual Defendant Williams owed Jericho DC such a fiduciary duty and breached that duty by "tak[ing] steps to harm and to destroy Plaintiff's enterprise." Am. Compl. ¶ 104.

Defendant Williams seeks summary judgment on this claim, contending that "Plaintiff has offered no evidence that the adoption of Resolution 1-09 . . . was a breach of Mrs. Williams'[s] fiduciary duty," and that "Plaintiff has failed to produce any evidence that it suffered any injuries as a result of the alleged breach." Defs.' Mot. at 21. Neither argument has any merit. The evidence shows that Williams was a board member of Jericho DC, *see George*, 2015 WL 12601903 ¶ 5; that she signed Resolution 1-09, *id.*; *see also* Resolution 1-09; that she attended a meeting that Joel Peebles convened under the misimpression that he was still a member of the board, but "made no mention of Resolution 1-09, or the existence of the newly-constituted Board of Trustees," *George*, 2015 WL 12601903 ¶ 9; and that she participated in incorporating Jericho MD and merging Jericho DC into the newly formed Maryland corporation, *id.* ¶ 11; *see also* Am. Compl. Exhibits, Ex. 3, Articles of Merger, at PDF p. 26; *id.* Ex. 5, Articles of Incorporation of Jericho MD, at PDF p. 37. A jury could conclude from this evidence that, by dishonestly effectuating the merger of Jericho DC into Jericho MD, Defendant Williams breached her fiduciary duties to Jericho DC, thereby causing Plaintiff's injuries.

Accordingly, Defendants' motion is denied as to Count VI.

### E.     Usurpation of Corporate Opportunity – Defendant Williams (Count VII)

In Count VII, Plaintiff asserts that Defendant Williams usurped Jericho DC's corporate opportunities by "join[ing] forces with adverse interests to Jericho DC," "attempt[ing] to create a newly elected Board of Trustees," and "facilitat[ing] Defendants' acquisition of Plaintiff's opportunities." Am. Compl. ¶ 96–97. Plaintiff's brief adds that Williams "knowingly participated

in the diversion of Jericho's then existing opportunities to herself and her fellow board members, effective March 15, 2009 with great benefits deriving therefrom."  Pl.'s Opp'n at 11.

The "usurpation of corporate opportunity" tort precludes corporate officers, directors and upper-level management employees "from diverting unto themselves opportunities which in fairness ought to belong to the corporation."  *Yah Kai World Wide Enterps., Inc. v. Napper*, No. 11-2174, 2016 WL 3647840, at *23 (D.D.C. July 3, 2016) (quoting *Maryland Metals*, *Inc. v. Metzner*, 382 A.2d 564, 572 & n.5 (Md. 1978)).  The tort is not well developed in the District of Columbia, *see Havilah Real Property Servs., LLC v. VLK, LLC*, 108 A.3d 334, 339 n.6 (D.C. 2015) (recognizing the doctrine in a footnote); however, Defendants do not contest the availability of the tort in general, so the court will assume for present purposes that such a tort exists under District of Columbia law.

Defendant Williams seeks summary judgment on Plaintiff's usurpation claim because, she argues, "Plaintiff has not proven that Mrs. Williams usurp[ed] Jericho DC."  Defs.' Mot. at 23. While the court agrees that Plaintiff has not substantiated its allegations that Williams diverted Jericho DC's corporate opportunities *for her own personal gain*, Williams *did* facilitate Jericho MD's takeover of Jericho DC, and there is evidence that Jericho MD diverted Jericho DC's opportunities.  *See e.g.*, Exhibits to Defs.' Mot., Ex. P, Mem. Op., at PDF p. 158 (noting that "a sizable portion of the income deposited into [Jericho MD's] Citibank account came from parking fee revenues, the origin of which was not the result of Jericho MD's independent efforts, but derived from a pre-existing venture of Jericho DC's").  A jury could therefore find Williams liable for exploiting her position as an officer of Jericho DC to facilitate Jericho MD's usurpation of Jericho DC's opportunities.[7]  *See Lawlor v. District of Columbia*, 758 A.2d 964, 977 (D.C. 2000)

---

[7] Defendants' argument that the "failure of Mrs. Williams to disclose [to Joel Peebles and William Meadows] that Apostle Betty Peebles had elected a new Board . . . is not a breach of duty" because "those other board members had

(holding that an officer who has "meaningful[ly] participat[ed]" in a corporation's wrongful acts may be held personally liable). The court therefore denies Defendants' motion as to Count VII.

### F. Common Law Trademark Infringement / Unfair Competition – Individual Defendants (Count VIII)

In Count XIII, Plaintiff claims that the Individual Defendants' use of the marks "Jericho Baptist Church Ministries" and "Jericho City of Praise" infringed on Plaintiff's common law trademarks, "creat[ing] substantial confusion" to Plaintiff's churchgoers and others. *See* Am. Compl. ¶¶ 109–10. In the District of Columbia, the torts of unfair competition and common law trademark infringement are analyzed under the same standard as the Lanham Act. *See Ward One Democrats, Inc. v. Woodland*, 898 A.2d 356, 361 (D.C. 2006). Therefore, to prevail on such a claim, a plaintiff must prove "(1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." *AARP v. Sycle*, 991 F. Supp. 2d 224, 229 (D.D.C. 2013) (quoting *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 26–27 (D.D.C. 2006)).

Defendants argue that Plaintiff's claim founders because, among other flaws, Plaintiff has offered no evidence its alleged trademarks are distinctive or have acquired a secondary meaning. *See* Defs.' Opp'n at 25. Plaintiff offers no response to this argument, focusing only on the injuries it has experienced as a result of the alleged violation. *See* Pl.'s Opp'n at 11–12. That is plainly insufficient. To overcome a motion for summary judgment, a plaintiff cannot sit on its hands, but must "support the assertion" that a fact is genuinely disputed by "citing to particular parts of

---

resigned from the Board at the March 15, 2009 meeting," Defs.' Mot. at 23, is irrelevant to the question whether Defendant Williams usurped Jericho DC's opportunities. In any event, the argument is fundamentally off base. Joel Peebles and Meadows did not voluntarily resign; they were deliberately deprived of their Board positions by the seemingly deceitful actions of Williams and others.

materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." *See* Fed. R. Civ. P. 56(c)(1). Because Plaintiff fails to provide any evidence or argument that the seemingly common names "Jericho Baptist Church Ministries" and "Jericho City of Praise" are in fact distinctive or have acquired a secondary meaning, the court grants Defendants' motion for summary judgment as to this count. *See Ward One Democrats*, 898 A.2d at 364 (holding that "direct or circumstantial evidence," such as "scientific surveys or polls of consumers," is required to prove that an indistinct mark has acquired a secondary meaning).

### G. Unjust Enrichment—All Individual Defendants (Count IX)

In its final substantive claim, Plaintiff alleges that the Individual Defendants have unjustly enriched themselves by "misappropriat[ing] certain of Plaintiff's finances," and "us[ing] said funds to pay for various [personal] expenses," that are "in no way related to the Plaintiff's interests." Am. Compl. ¶¶ 111–12. The elements of an unjust enrichment claim are: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).

Defendants seek summary judgment on the ground that Plaintiff has provided no evidence that Jericho DC "conferred a benefit on the defendants; that the defendants retain the benefit; [or] that under the circumstances, the defendants' retention of the benefit is unjust." Defs.' Mot. at 26. The court agrees that Plaintiff has provided no evidence that any of the Individual Defendants have *personally* received and retained benefits from Plaintiff. Plaintiff argues that "at least two Individual Defendants personally enriched themselves at Jericho DC's expense," and that "Defendants were unjustly enriched by excessive salaries and payment of personal credit cards one of which was used to shop at Victoria Secrets [*sic*]," *see* Pl.'s Opp'n at 13, but its only

supporting evidence is a conclusory and unsupported answer to one of Defendants' interrogatories, *see* Exhibits to Pl.'s Opp'n, Ex. 3, Pl.'s Answers to Defs.' Interrogatories, ECF No. 72-4, at 8 (contending, without any support, that "certain defendants expended monies for personal reasons and were paid salaries that were excessive in nature"). Such "conclusory allegations," wholly lacking in "specific facts or support from the record," are "insufficient to create a genuine factual issue." *Camara v. Mastro's Restaurants LLC*, No. 18-7167, 2020 WL 1263998, at *2 (D.C. Cir. Mar. 17, 2020). Therefore the court grants Defendants' motion as to Count IX.

### H.    Civil Conspiracy – Individual Defendants

Finally, the court turns to Plaintiff's allegations of civil conspiracy. Plaintiff argues that the Individual Defendants are liable for civil conspiracy because they "collaborated and agreed to convert Plaintiff's legal and business identities, properties and trademark, and to fraudulently acquire control over Plaintiff's financial affairs and bank funds." Am. Compl. ¶ 116. Civil conspiracy is not a standalone tort in the District of Columbia. *See Grimes v. D.C., Bus. Decisions Info. Inc.*, 89 A.3d 107, 115 (D.C. 2014). Rather, it is a means of establishing vicarious liability for an underlying tort. *Id.* The elements of civil conspiracy are: "(1) an agreement between two or more persons[,] (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)).

Defendants assert they are entitled to summary judgment on Plaintiff's civil conspiracy claim because: (1) the evidence shows that Betty Peebles implemented Resolution 1-09, and Plaintiff has offered no evidence to support its allegations that the Individual Defendants are liable for conspiracy; (2) Plaintiff has failed to name a necessary party, Betty Peebles, as a defendant to

this action; and (3) the claim was improperly pleaded as an independent cause of action.[8]  Defs.'

Mot. at 27–28.

Defendants' first argument is plainly unavailing.  Whether or not Betty Peebles initiated

Resolution 1-09, there is record evidence on which a jury could conclude that the takeover of

Jericho DC and its assets was unlawful, and that the Individual Defendants agreed—at least

tacitly—to participate in the takeover.  *See* 16 Am. Jur. 2d Conspiracy § 10 (2020) ("An agreement

. . . need not be formal or express but may be a tacit understanding; the agreement may be inherent

in and inferred from the circumstances especially declarations, acts, and conduct of the alleged

conspirators." (footnotes omitted)).  Defendants' second argument fairs no better.  Betty Peebles

is deceased and therefore cannot be personally joined as a defendant to this action  Nor have

Defendants identified any reasons why Ms. Peebles's estate is a necessary party.  *See* Fed. R. Civ.

P. 19.

Finally, Plaintiff's conspiracy claim is not freestanding.  Rather, it asserts that the

Individual Defendants are liable for conspiring to commit other common law torts—namely, fraud

and conversion—alleged in the Complaint.  *See* Am. Compl. ¶ 116; *see also* Pl.'s Opp'n at 13.

Therefore, Plaintiff's conspiracy claim may proceed insofar as there are genuine issues of material

facts that could support those underlying torts.  *Cf. Elliott v. Healthcare Corp.*, 629 A.2d 6, 10

(D.C. 1993) (upholding the grant of summary judgment as to a civil conspiracy claim where the

record was "devoid of any evidence to establish vicarious liability for any underlying tort").

The court defers ruling on Defendants' motion, however, as neither party has provided any

briefing on whether the intracorporate conspiracy doctrine—which dictates that employees acting

within the scope of their employment cannot conspire among themselves or with their employer—

---

[8] Defendants also argue in passing that Plaintiff's civil conspiracy claim is "preempted by Count III."  Defs.' Mot. at 27.  This argument is forfeited as it is wholly undeveloped.  *See Al-Tamimi*, 916 F.3d at 6.

has been adopted by the District of Columbia courts, and if so, whether it bars Plaintiff's claims of conspiracy. *See Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 15 (D.D.C. 2015) (discussing the doctrine). The court will therefore allow Defendants an opportunity to submit supplemental briefing that addresses this issue.

## V.  CONCLUSION AND ORDER

For the foregoing reasons, the court denies in part and grants in part Defendants' Motion for Summary Judgment, ECF No. 66, as follows:

1. As to Counts I through III (RICO and RICO conspiracy), the court defers ruling on Defendants' motion, subject to additional briefing on whether Plaintiff has established a "pattern of racketeering activity."

2. As to Count IV (fraud), Defendants' motion is granted as to Defendant Boswell and Jericho MD, and denied as to the remaining Individual Defendants.

3. As to Count V (conversion), Defendants' motion is denied.

4. As to Count VI (breach of fiduciary duty), Defendants' motion is denied.

5. As to Count VII (usurpation of corporate opportunity), Defendants' motion is denied.

6. As to Count VIII (trademark infringement), Defendants' motion is granted.

7. As to Count IX (unjust enrichment), Defendants' motion is granted.

8. As to Plaintiff's civil conspiracy claims, the court defers ruling on Defendants' motion subject to additional briefing on the intracorporate conspiracy doctrine.

The court will issue a separate Order detailing the issues that require additional development and setting a schedule for that briefing. In addition, because Plaintiff's expert's report was not needed to resolve Defendants' Motion for Summary Judgment, the court denies

Defendants' Motion to Strike, ECF No. 65, without prejudice.  Defendants may refile the motion before trial.

Dated:  April 8, 2020

Amit P. Mehta
United States District Judge